**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FEDERAL TRADE COMMISSION and

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiffs.

vs.

1st FINANCIAL SOLUTIONS, INC., an Illinois corporation;

AMERICAN BENEFITS CLUB, INC., an Illinois corporation;

ROCKWELL HOLDINGS, INC., an Illinois corporation; and

JOHN F. BOONE, individually and as an officer of Rockwell Holdings, Inc.,

Defendants.

Case No. 01 C 8790

Hon. James F. Holderman

DOCKETED
MAR 0 1 2002

FILED
FEB 1 9 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR RULE TO SHOW CAUSE WHY JOHN F. BOONE AND MARTY J. SCHWARTZ, ESQ. SHOULD NOT BE HELD IN CONTEMPT**

Gregg E. Szilagyi, the Receiver (the "Receiver"), submits this Memorandum in Support of his Motion for Rule to Show Cause Why John F. Boone ("Boone") and Marty J. Schwartz, Esq. ("Schwartz") Should Not be Held in Contempt.

## BACKGROUND FACTS

On November 14, 2001, the Federal Trade Commission and the People of the State of Illinois (collectively, "Plaintiffs") filed the present Complaint alleging that 1st Financial Solutions, Inc., American Benefits Club, Inc., Rockwell Holdings, Inc. and John F. Boone (collectively, "Defendants") violated certain federal and state statutes

35

including the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. §§ 6101, *et seq.*), the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" (16 C.F.R. Part 310), the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) and the Credit Services Organizations Act (815 ILCS 605/1, *et seq.*) On November 14, 2001, Plaintiffs also filed an *ex parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of Receiver and other Equitable Relief and Order to Show Cause why a Preliminary Injunction Should not Issue. On November 19, 2001, Judge Kocoras[1] entered a Temporary Restraining Order with Asset Freeze and Temporary Receiver, Order for Expedited Discovery and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "TRO"). A copy of the TRO is attached to the Affidavit of Gregg E. Szilagyi ("GES Aff.") as Exhibit A. The TRO, *inter alia*:

a. Defined "Receivership Defendants" as "1st Financial Solutions, Inc., American Benefits Club, Inc., Rockwell Holdings, Inc., and any affiliates, subsidiaries, divisions, sales entities, successors or assigns."[2] TRO at p. 3.

b. Appointed Gregg E. Szilagyi Temporary Receiver for the Defendant entities 1st Financial Solutions, Inc., American Benefits Club, Inc., Rockwell Holdings, Inc., "and any affiliates, subsidiaries, divisions, sales entities, successors or assigns, with the full power of an equity receiver." TRO at p. 13.

c. Directed and authorized the Receiver to take possession of all assets of the Receivership Defendants, wherever located. TRO at p. 13.

d. Required financial institutions to freeze all accounts of the named Defendants and those of "any corporation, partnership, or other entity directly or indirectly owned managed, or controlled by, or under common control with" the

---

1 On December 17, 2001, Judge Kocoras recused himself from this case and on December 19, 2001 the case was assigned to this Court.

2 The TRO did not define "Affiliates." The Receiver interprets this term as defined under the Illinois Business Corporation Act, 805 ILCS 5/11.75: "Affiliate means a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, another person."

named Defendants. TRO at pp. 10-11. The Order further required financial institutions to transfer the funds contained in any such account to the Receiver at his request. TRO at p. 12.

e. Restrained the Defendants from transferring any assets of the Receivership Defendants or in any way interfering with the Receiver's exercise of his duties under the Order. TRO at p. 18-19.

f. Required non-parties with actual notice of the Court's Order to cooperate with the Receiver and to deliver to the Receiver upon his request all assets of the Receivership Defendants. TRO at p. 19.

On November 29, 2001, Judge Kocoras entered a Stipulated Preliminary Injunction (the "PI") that confirmed Mr. Szilagyi's appointment as Receiver and contained substantively identical provisions as those contained in the TRO. A copy of the PI is attached to Mr. Szilagyi's Affidavit as Exhibit B.

**PARTIES AND ENTITIES INVOLVED**

**1. John F. Boone**

John F. Boone, a named Defendant, is an owner, officer and management–level employee of several of the Receivership Defendants and their affiliated entities. Boone is the President of Rockwell Holdings, Inc. and Affinity Marketing & Sales, Inc. GES Aff. at ¶ 3.

**2. Marty J. Schwartz, Esq.**

Marty J. Schwartz, Esq. is the attorney of record representing Boone and the other Defendants. Schwartz conducts his business from the offices of Marty J. Schwartz, P.C. located at Three First National Plaza, Suite 3700, in Chicago, Illinois.

**3. Affinity Marketing & Sales, Inc.**

Affinity Marketing & Sales, Inc. ("Affinity") is engaged in the business of telemarketing of consumer credit-related products and services. Affinity is under common ownership and control of the named Defendants and is a "Receivership Defendant" as that term is used in the Court's Orders in this case. GES Aff. at ¶ 3. Affinity is the primary business entity or "d/b/a" under which the Defendants conducted their telemarketing business. Affinity has several bank accounts, including account number 1058319 at American Chartered Bank in Schaumburg, Illinois. GES Aff. at ¶ 3.

**SERVICE OF THE COURT'S ORDERS**

On November 20, 2001 at 9:05 a.m. Central Standard Time, the TRO was served on all named Defendants, including Boone, via personal service. GES Aff. at ¶ 4. Shortly after service of the TRO, the Receiver and his counsel met with Boone at the Defendants' business premises located at 1002 E. Algonquin Road, Suite 102, in Schaumburg, Illinois. GES Aff. at ¶ 4. Boone was informed of the specific provisions and prohibitions of the TRO, including the asset freeze. GES Aff. at ¶ 4. The Receiver is informed and believes that Schwartz had actual notice of the TRO on the morning of November 20, shortly after it was served on the Defendants. GES Aff. at ¶ 4.

**TRANSFER OF RECEIVERSHIP FUNDS**

Documents obtained from American Chartered Bank indicate that on November 20, 2001 at 10:31 a.m. Central Standard Time, $150,000 was transferred by wire from Affinity's account number 1058319 at American Chartered Bank to. GES Aff. at ¶ 5. This wire transfer, made upon the telephonic authorization of John F. Boone, was made one day after this Court entered the TRO and over one hour after Mr. Boone had been

personally served with the TRO. Mr. Boone's authorization of the $150,000 transfer was in clear violation of the TRO.

Furthermore, Boone's $150,000 transfer was of Receivership funds that, as of November 19, 2001, were under the exclusive custody and control of this Court pursuant to the TRO, the appointment of the Receiver and creation of the Receivership estate. The TRO (and, subsequently, the PI) specifically ordered persons in possession of Receivership property to transfer that property to the Receiver upon his demand. In a letter dated December 4, 2001, the Receiver, by his counsel, demanded Mr. Schwartz to return the $150,000. GES Aff. at ¶ 6. To date, Mr. Schwartz has refused to return the $150,000 to the Receiver. GES Aff. at ¶ 6.[3]

## ARGUMENT

### 1. Boone's Transfer of $150,000 from Affinity's Account to Schwartz' Account on November 20, 2001 Violated the TRO, as Does Schwartz' Refusal to Return the Funds.

The TRO, entered on November 19, 2001, enjoined Boone from transferring assets of the Receivership Defendants and froze their bank accounts. The TRO bound Boone when it was served upon him at 9:05 a.m. on November 20, 2001 and also bound Schwartz, the Defendants' attorney. Fed. R. Civ. P. 65(d) (injunctions and restraining orders are binding upon the parties to the action, their officers, employees and attorneys).

Funds in the Receivership Defendants' accounts were frozen upon entry of the order appointing a receiver and may not be alienated, transferred or disposed without the Court's consent. *See* 65 Am. Jur. 2d *Receivers* § 119 (2001), *citing Brill v. Citizens Trust*

---

3 Mr. Schwartz informed the Receiver that a third party, Mr. John Michener, alleges a claim to the $150,000 superior to that of the Receiver. The Receiver disputes Mr. Michener's claim and has conveyed his (the Receiver's) position to Mr. Michener. GES Aff. at ¶ 7. Further, Mr. Michener's claim does not justify Mr. Schwartz' refusal to return the $150,000 to the Receiver. Given this dispute, the Receiver has given Mr. Michener notice of the present motion.

*Co.*, 492 A.2d 1215 (R.I. 1985); *In re Coger*, 340 F.Supp. 612 (W.D. Va. 1972); *See also United States v. Arizona Fuels Corporation*, 739 F.2d 455, 458 (9th Cir. 1984) ("[T]he district court vested all rights and title to all [defendant's] assets in the Receiver on the date of appointment."). Any claims of creditors against the Receivership assets existing as of the date of appointment, such as that alleged by Mr. Michener, are suspended as of that date pending judicial determination of assets, liabilities, and claimants' priorities. *See Arizona Fuels Corporation*, 739 F.2d at 458.

Furthermore, the TRO and the subsequent PI unequivocally require parties' attorneys in possession of Receivership assets to return those assets to the Receiver upon his demand. By authorizing the transfer of funds after entry of the TRO and service of the TRO upon him, Boone violated the TRO. Likewise, by refusing to return the $150,000, Schwartz is in contempt of the TRO and PI.

**2. Civil Contempt Sanctions**

Courts have inherent power to enforce their own orders by punishing disobedient parties with civil contempt sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 737-738 (7th Cir. 1999). A court has discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 45.

To support a finding of civil contempt, "the district court must be able to point to a decree from the court which set[s] forth in specific detail an unequivocal command which the party in contempt violated." *Jones*, 188 F.3d at 738; *See also United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Civil contempt sanctions, as opposed to criminal contempt sanctions, may be imposed upon the court's own finding by clear and

convincing evidence that a party has violated the court's unequivocal command. *Dowell,* 257 F. 3d at 699. A party may be found in civil contempt if it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989), quoting *American Fletcher Mortgage Co., v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982).

Non-parties may be held in civil contempt for disobedience of a court order that is applicable to the non-party. Fed. R. Civ. P. 71[4]; *see also Stotler & Co.,* 870 F.2d at 1164 (non-party may be adjudicated in contempt where non-party had actual knowledge of a clear and unequivocal command from the court and then either abetted a party in failing to comply with the order or became legally identified with the disobedient party.); *see also United States v. Arizona Fuels Corporation*, 739 F.2d 455, 458 (9th Cir. 1984) ("A receiver may proceed summarily to recover money belonging to the receivership by petition to the appointing court for an order to show cause against a possessor not a party to the original action." *citing* 75 C.J.S. *Receivers* §§ 319, 118 n. 57).

A court may order compensatory sanctions designed to compensate the complainant for its loss resulting from the contemnor's non-compliance. *United States v. United Mine Workers of America*, 330 U.S. 258, 303-304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Grove Fresh Distrib., Inc. v. John LaBatt Ltd.*, 888 F.Supp. 1427, 1435 (N.D.Ill 1995), *aff'd.*, 134 F.3d 374 (7th Cir. 1998); *See also, Dowell,* 257 F.3d at 699. Compensatory sanctions may include an award of costs and attorneys' fees to reimburse the complainant. *Chambers,* 501 U.S. at 45; *Grove Fresh*, 888 F.Supp. at 1436.

---

4 Fed. R. Civ. P. 71 in relevant part provides, "[W]hen obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party."

## RELIEF REQUESTED

**1.  Marty J. Schwartz**

Schwartz received and remains in possession and control of $150,000 of Receivership funds in violation of the TRO and PI that require non-parties to cooperate with the Receiver and deliver to the Receiver assets of the Receivership Defendants upon demand. As Defendants' counsel, pursuant to Fed. R. Civ. P. 65(d), Schwartz is bound by TRO and the PI. Accordingly, Schwartz' refusal to return receivership property to the Receiver is in contempt of the TRO and the PI. The Receiver requests that the Court order Schwartz to return this $150,000 to the Receiver.

**2.  John F. Boone**

Boone knowingly violated the TRO when he directed American Chartered Bank to wire transfer $150,000 from the Affinity account after he had been served with the TRO which specifically enjoined such transfers. This Court should find that Boone acted in contempt of the TRO in authorizing this wire transfer. If the $150,000 is not returned to the Receivership estate based upon, for example, a finding that Mr. Michener has a superior claim, Boone should be ordered to reimburse the Receivership estate for any deficiency. Further, Boone should be sanctioned $5,000 to compensate the Receiver for his costs, including reasonable attorney's fees, in investigating and bringing this motion. See GES Aff. at ¶ 8.

**CONCLUSION**

For each of the reasons set forth above, either independently or in combination, Gregg E. Szilagyi the Court-appointed Receiver, urges that his Motion for Rule to Show Cause Why John F. Boone and Marty J. Schwartz, Esq. Should Not be Held in Contempt be granted.

Dated February 19, 2002.

**Respectfully Submitted,**

By: ______________________
One of the Attorneys for
Gregg E. Szilagyi, as Receiver

Susan G. Feibus
Christopher L. Rexroat
Samera S. Ludwig
Ungaretti & Harris
3500 Three First National Plaza
Chicago, Illinois 60602
Telephone: (312) 977-4400
Facsimile: (312) 977-4405